UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MELANIE H. COOPER,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-08-S-2024-NE** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Melanie Cooper commenced this action on October 30, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for a period of disability and disability benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ erred in failing to fully credit the opinion of Dr. Donna Scott, claimant's treating psychiatrist, that claimant would suffer disabling impairments even if she discontinued her substance abuse. Upon review of the record, the court concludes this contention is without merit.

Claimant alleged disability as a result of bipolar disorder, chronic anxiety, and personality disorder.[1] The ALJ found that claimant suffered from the severe impairments of bipolar disorder with psychotic features, panic disorder, borderline personality disorder, cocaine dependence, alcohol abuse, and cannabis abuse.[2] The ALJ further found that claimant's impairments, including the substance abuse disorders, met the requirements of Listing 12.04, for affective disorders, and Lisitng 12.09, for substance addiction disorders.[3] The ALJ nonetheless concluded that if claimant stopped her substance abuse, she would no longer have an impairment or combination of impairments that satisfied one of the listings, and she

> would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  She can remember short, simple, and detailed but not

---

[1] Tr. at 67.
[2] Tr. at 14.
[3] Tr. at 15.

2

> complex instructions. She can maintain attention and concentration for two-hour work periods and to complete a regular workday at an acceptable pace and attendance schedule. Proximity to others should not be intense. She is able to interact appropriately in brief, casual encounters with the public and with co-workers, and to respond appropriately to non-confrontational feedback. Her working environment should limit continuous and prolonged contact with others. She is able to respond to simple and infrequent changes in work routine. She can formulate simple, short-term work-related goals.[4]

Even with those limitations, the ALJ concluded that claimant could return to her past relevant work as a landscaper. The ALJ therefore found claimant not to be disabled as a result of her limitations.

The ALJ's analysis of claimant's substance abuse-related impairments was in accordance with applicable law. *See* 42 U.S.C. § 423(d)(2)(c) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.").

> The regulations implementing § 423(d)(2)(c) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. *See*

---

[4]Tr. at 17-18.

3

20 C.F.R. § 404.1535(b)(1).

*Doughty v. Apfel,* 245 F.3d 1274, 1279 (11th Cir. 2001) (ellipses in original). Claimant bears the burden of proving that substance abuse is *not* a contributing factor material to the disability determination. *Id.* at 1281.

Claimant does not dispute that the ALJ followed the proper framework for analyzing a claim involving substance abuse, but she nonetheless argues that the ALJ's decision was not supported by substantial evidence because the ALJ failed to fully credit the opinion of Dr. Scott, claimant's treating psychiatrist. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Additionally, the ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Dr. Scott completed a Medical Source Opinion Form (Mental) for claimant on

March 19, 2008. Dr. Scott indicated that claimant had moderate impairments in her ability to respond appropriately to supervisors, co-workers, customers, and other members of the general public, as well as in her ability to maintain activities of daily living. Claimant had marked impairments in her ability to use judgment in simple, one- or two-step, work-related decisions, or in detailed or complex work-related decisions; to deal with changes in a routine work setting; to understand, remember and carry out simple or complex work instructions; to maintain attention, concentration or pace for periods of at least two hours; and to maintain social functioning. Claimant would have extreme limitations in her ability to respond to customary work pressures. In a narrative statement of her clinical findings, Dr. Scott noted that claimant had severe bipolar disorder with psychotic features, panic attacks, and borderline personality disorder. As a result of those conditions, claimant "has moderate to marked impairments in ability to adjust to changes in her environment and to develop coping skills necessary to manage work stressors."[5] Importantly, Dr. Scott indicated that if drug or alcohol abuse were to stop, there would not be any change in claimant's limitations. Dr. Scott also indicated that she completed the form based primarily on claimant's subjective complaints.[6]

---

[5]Tr. at 186-87.
[6]Tr. at 187.

The ALJ considered Dr. Scott's assessment, including the opinion that claimant's limitations would change if her substance abuse stopped, but he rejected that opinion in favor of the assessment of Dr. Susan Kotler, the state agency psychologist. On July 27, 2006, Dr. Kotler indicated that claimant had only moderate restrictions in her activities of daily living, her ability to maintain social functioning, and her ability to maintain concentration, persistence, and pace, and she had experienced no episodes of decompensation, each of extended duration.[7] In a narrative summary of claimant's impairments, Dr. Kotler stated that claimant's medical records reflected intermittent cocaine and cannabis use from March to July of 2006, and that claimant was scheduled for inpatient substance abuse treatment in July of 2006. Dr. Kotler also stated: "The evidence indicates that when claimant is regularly abusing substances, her limitations are marked and meet the listing for 12.09 . . . . With current occasional and non–problematic substance use, limitations from the other mental conditions are less than marked . . . ."[8]

The ALJ stated the following to support his decision to credit Dr. Kotler's assessment:

> The claimant's testimony reflected much confusion as to the date of her alleged sobriety. She said that being caught with cocaine is

---

[7]Tr. at 167-68.
[8]Tr. at 169.

probably the best thing that has ever happened to her because she received rehabilitation. At the hearing, the claimant could not remember the year she was arrested, believing it to have been 2005 or 2006, but after the hearing her attorney reported that the arrest occurred on August 16, 2004 . . . .  The claimant said that the year she was arrested she had been "strung out" for more than a year.  She said that she has not been in any trouble since then and tries to be "extremely honest" with her therapist, group, and doctor.  However, her treatment notes reflect ongoing substance abuse.

      Records from the Mental Health Center indicate that the claimant underwent rehabilitation sometime after July 2006 and before January 24, 2007.  In March 2007, Dr. Scott found that the claimant had suicidal ideation and was "still using" drugs "but not as much as before."  The claimant reportedly was feeling better on medications.  In June 2007, the claimant reportedly had been "clean" since May 4; however, she claimant [sic] reportedly was only "trying to stay clean" in September 2007, and she reportedly used cocaine in January 2008 . . . .  On January 22, 2008, she reportedly told Dr. Scott that she had used cocaine "yesterday," and on January 23, 2008, she reportedly told a therapist that she was "using every" three to four months.  However, in March 2008, she reportedly stated that she last used in mid-February.[9]

Essentially, the ALJ questioned the credibility of claimant's statements regarding her drug use due to inconsistencies in the medical records. That assessment of claimant's credibility was a proper determination for the ALJ to make. *See* 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (in evaluating whether a claimant's subjective symptoms are of a disabling severity, the Commissioner "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts

---

[9]Tr. at 19.

between your statements and the rest of the evidence"); SSR 96-7p, at *5, 61 Fed. Reg. 34483, 34486 (1996) ("The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record."). Further, the ALJ was entitled to give more weight to Dr. Kotler's assessment than Dr. Scott's if he found Dr. Kotler's opinion to be more consistent with the *credible* evidence of record. *See Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981) ("The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence.").

Based on the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 29th day of September, 2009.

_____
United States District Judge